NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

CHASTITY S., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, A.L., J.L., *Appellees.*

No. 1 CA-JV 16-0309
FILED 1-31-2017

Appeal from the Superior Court in Maricopa County
No. JD28174
The Honorable Kristin C. Hoffman, Judge, Retired

**AFFIRMED**

COUNSEL

Law Office of H Clark Jones LLC, Mesa
By Clark Jones
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Daniel R. Huff
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge Jon W. Thompson delivered the decision of the Court, in which Presiding Judge Randall M. Howe and Judge Lawrence F. Winthrop joined.

---

**T H O M P S O N**, Judge:

¶1        Chastity S. (mother) appeals from the juvenile court's order severing her parental rights to A.L. and J.L.  For the reasons that follow, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2        Mother is the biological parent of the two children who are subjects of this appeal, A.L. and J.L.  She has two other children, H.S. and D.R., who are not involved in this matter.

¶3        The Department of Child Safety's (DCS) involvement in mother's parental relationship with the subject children developed after DCS received reports that mother was neglecting them by engaging in domestic violence in their presence, with her father (maternal grandfather). Two months later, DCS received a second report alleging that mother's home had no running water or food, and there was a high volume of traffic related to maternal grandfather's selling drugs out of the home.  The report to DCS also mentioned that mother had unaddressed mental health diagnoses.

¶4        In April 2014, DCS visited the home.  They found the children were "dirty and were wearing dirty clothes."  DCS also confirmed the home condition, as reported, and mother admitted to having recently — in the past several days — used both methamphetamine and marijuana.  The DCS investigator discovered that A.L., nearly six years old at the time, had not been enrolled in school and J.L. had an untreated "medical need for his right eye."

¶5        DCS removed the children from the home and subsequently filed a dependency petition, alleging the children were dependent because mother abused substances, had untreated mental-health issues, engaged in domestic violence, and failed to provide a home with food and running water.  Mother denied the allegations, but the juvenile court ultimately adjudicated the children dependent.

¶6 DCS offered mother substance-abuse assessment, random drug testing, a parent-aide, a case aide, and transportation. The court additionally ordered that DCS provide mother with substance abuse treatment, a psychological evaluation, individual counseling, and supervised visits.

¶7 All the while, mother remained in the same home, even though she admits the home is a trigger for her drug use. Mother also rescheduled, and thus failed to attend, five of six scheduled psychological evaluations. She would eventually complete a psychological evaluation in May 2016, after which the evaluating doctor diagnosed her with bipolar disorder, stimulant-use disorder, and borderline intellectual functioning.

¶8 In July 2016, the juvenile court held a contested severance hearing. The children had been out of mother's home for more than two years. At the hearing, a DCS case manager testified that mother had not resolved the issues that had caused the children to be in out-of-home placements. Mother also testified. After taking the matter under advisement, eight days later—on July 14, 2016, the court issued its order terminating mother's parental rights. In the order the court found that grounds for termination existed because the children had been in out-of-home placement for a cumulative period of fifteen months or longer. The court also found that termination of mother's parental rights was in the children's best interests.

¶9 Mother timely appealed to this court. We have jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) §§ 8-235(A) (2014), 12-120.21(A)(1) (2016), and -2101(A)(1) (2016).[1]

## DISCUSSION

¶10 On appeal, mother contends that: (1) the evidence before the juvenile court was insufficient to support the court's finding that termination of her parental rights was justified on the statutory ground of fifteen-months out-of-home placement; and (2) the court erred in finding that termination of her parental rights was in the children's best interests. Because sufficient evidence in the record supports the termination of mother's parental rights based on the statutory ground DCS asserted for termination and the juvenile court's best interest findings, we affirm.

---

[1] Absent material changes from the relevant date, we cite a statute's current version.

¶11        A parent's right to custody and control of his or her own child while fundamental, is not absolute. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248-49, ¶¶ 11-12, 995 P.2d 682, 684-85 (2000). Severance of a parental relationship may be warranted where the state proves one of A.R.S. § 8-533's statutory grounds for termination by clear and convincing evidence. *Id*. at 249, 995 P.2d at 686; *see also* A.R.S. § 8-863(B) (2014). Clear and convincing means the grounds for termination are "highly probable or reasonably certain." *Kent K. v. Bobby M.*, 210 Ariz. 279, 284-85, ¶ 25, 110 P.3d 1013, 1018-19 (2005). The juvenile court must additionally find, by preponderance of the evidence, that severance of the parental relationship is in a child's best interest. *Id*. at 284, ¶ 22, 110 P.3d at 1018. The preponderance of the evidence standard of proof requires the fact-finder determine that "more probable than not," severance is in a child's best interest. *Id*. at ¶ 25.

¶12        Because the juvenile court is in the best position to judge credibility and weigh evidence, "we will accept the juvenile court's finding of fact unless no reasonable evidence supports those findings, and we will affirm a severance order unless it is clearly erroneous." *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4, 53 P.3d 203, 205 (App. 2002) (citation omitted). We do not reweigh the evidence, but "look only to determine if there is evidence to sustain the court's ruling." *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8, 83 P.3d 43, 48 (App. 2004) (citation omitted).

## I.    Sufficient evidence in the record supports the juvenile court's finding of the statutory ground for termination.

¶13        The juvenile court determined that DCS proved the statutory ground of fifteen-months out-of-home placement for termination of mother's parental rights. We agree.

¶14        Evidence sufficient to justify termination of a parent-child relationship under A.R.S. § 8-533 includes that DCS has made a "diligent effort to provide reunification services" and

> [t]he child has been in an out-of-home placement for a cumulative total period of fifteen months or longer pursuant to court order . . . the parent has been unable to remedy the circumstances that cause the child to be in an out-of-home placement and there is a substantial likelihood that the parent will not be capable of exercising proper and effective parental care and control in the near future.

A.R.S. § 8-533(B)(8)(c) (2014).

¶15      The record supports the court's finding that as of the time of the severance, the children had been in out-of-home placements for fifteen or more months.  On appeal, mother does not argue that the children should not have been in DCS's care for that length of time.  She does, however, argue that she engaged in the case plan services to ameliorate her substance abuse, mental health, and domestic violence issues that led to DCS removing the children from her home.   To the contrary, the record reflects that mother had not made the necessary progress, despite DCS offering her various services.

¶16      Granted, the record documents that mother consistently attended supervised visits with her children, had completed substance abuse treatment and tested clean during much of the dependency, and, as DCS reported, had been "sober for nearly two years[,]" as of April 2016.  However, two months before the severance hearing, her psychiatrist opined that mother's mental health issues caused her to "become easily frustrated with her children, [and mother] ha[d] problems managing their behaviors, and ha[d] a history of biting and pinching them when she [was] angry."  The doctor further stated that the children could not safely return to mother until she successfully participated in individual therapy and met treatment goals.  The record shows mother had not accomplished these objectives at the time of the severance trial.[2]  Mother also failed to complete domestic violence treatment and was closed out of those services in January 2016 for non-attendance.

¶17      This evidence supports the conclusion that mother would be unable to take the necessary steps to effectively parent the children in the near future.  Accordingly, we hold that clear and convincing evidence supports the juvenile court's order terminating mother's parental rights on the fifteen-months out-of-home placement statutory ground.

---

[2]      The record does not support mother's position that she "could not complete [individual therapy] because she had difficulty getting transportation to the sessions.  The record shows that DCS offered her transportation and bus passes to assist her in her case plan services.

II.    **Sufficient evidence in the record supports the court's finding that severance was in the children's best interests.**

¶18    Mother further argues that the juvenile court erred in finding that terminating her parental rights was in the children's best interests because DCS failed to prove by a preponderance of the evidence that the children would "accrue an affirmative benefit" from her parental rights being severed or be harmed by continuing the relationship.  We disagree.

¶19    As mother indicates, the best interest inquiry "must include a finding as to how the child would benefit from a severance [of the parent-child relationship] *or* be harmed by the continuation of the relationship." *Maricopa Cty. Juv. Action No. JS-500274*, 167 Ariz. 1, 5, 804 P.2d 730, 734 (1990).  In evaluating whether severance is in a child's best interest, the juvenile court is required to conduct the inquiry considering "the totality of the circumstances." *Dominque M. v. Dep't of Child Safety*, 240 Ariz. 96, _ ¶ 12, 376 P.3d 699, 702 (App. 2016).  Thus, "the existence and effect of a bonded relationship between a biological parent and a child, although a factor to consider, is not dispositive in addressing best interests." *Id.* at _, ¶ 12, 376 P.3d at 701.  Moreover, this court has held that a finding that severance is in a child's best interest may be accomplished by a showing that a child is adoptable,[3] and the current placement is meeting the child's needs. *See Mary Lou C.*, 207 Ariz. at 50, ¶ 19, 83 P.3d at 50 (App. 2004).

¶20    Here, the record indicates that although the children are bonded with mother, they are adoptable, and the children's placements are meeting their needs.  DCS reported that it identified an adoptive placement for A.L. and, even began transition visits, and that J.L. is "secure and comfortable" in his adoptive placement.  One DCS case manager testified that termination of mother's parental rights would provide the children with "permanency."  DCS case managers also testified that the children lacked stability with mother.  The doctor who diagnosed mother with the noted mental health disorders just two months before the severance hearing, found, among other things, that the children could not safely be

---

[3]    *See Maricopa Cty. Juv. Action No. JS-501904*, 180 Ariz. 348, 352, 884 P.2d 234, 238 (App. 1994) ("[DCS] need not show that it has a specific adoption plan before terminating a parent's rights; [DCS] must show that the children are adoptable.").

returned to mother's care until mother "moved from home."[4] As noted, mother admits that home is a trigger for her drug use, and maternal grandfather allegedly deals drugs out of the home. Additionally, the juvenile court found mother's testimony regarding the infrequency of domestic violence between her and maternal grandfather to be "not credible." Juxtaposing the stability that adoption would provide the children with an alternative uncertainty and what the record suggests is highly likely to be an unsafe and unstable life with mother, we conclude the court's best interest finding, as to both children, is sufficiently supported by the evidence.

¶21 Accordingly, the juvenile court did not err in severing mother's parental rights as to A.L. and J.L.

## CONCLUSION

¶22 We thus affirm the juvenile court's order terminating mother's parental rights as to both children.



---

[4] We cannot reconcile mother's claim in her opening brief on appeal that she intends to move out from the home she shares with maternal grandfather with the fact that she failed to do so over the twenty-seven months, prior to severance, that the children were in DCS's care.